UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY WARD,                                    Case No. 18-12477

              Plaintiff,              Linda V. Parker

v.                                             United States District Judge

COMMISSIONER OF SOCIAL                         Stephanie Dawkins Davis
SECURITY,                                      United States Magistrate Judge

              Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 15)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On August 9, 2018, plaintiff Terry Ward filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Linda V. Parker referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability, disability insurance benefits, and supplemental security

income benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 12, 15).

B.    Administrative Proceedings

Ward filed an application for a period of disability and disability insurance benefits on February 22, 2016 and an application for supplemental security income on February 26, 2016, both alleging disability beginning on October 7, 2009.  (Tr. 13).[1]  The claims were initially disapproved by the Commissioner on June 24, 2016.  On August 31, 2017, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Janet L. Alaga-Gadigian, who considered the case *de novo*. (Tr. 13-26).  In a decision dated December 1, 2017, the ALJ found that plaintiff was not disabled.  (Tr. 26).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on July 6, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

Ward, born November 15, 1970, was 38 years old on the alleged disability onset date.  (Tr. 25).  She has a limited education and past relevant work as a cosmetics salesperson and a waitress.  (Tr. 24-25).  She claims she cannot work because of back pain, leg pain, and migraines.  (Tr. 245).  She was in a car accident some 20 years ago, and in 2007 she noticed her back pain was getting worse.  (Tr. 48-49).

The ALJ applied the five-step disability analysis and found at step one that Ward had not engaged in substantial gainful activity since October 7, 2009, the alleged onset date.  (Tr. 16).  At step two, the ALJ found that, from the alleged onset date through the date last insured of September 30, 2012, Ward's obesity was "severe" within the meaning of the second sequential step.  Since the application for supplemental security income filed on February 26, 2016, the ALJ found that her degenerative disc disease of the thoracic and lumbar spine, grade 1 spondylolisthesis at L5-S1, vacuum disc phenomenon at L5-S1, migraine headaches, and dysthymic disorder were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 16-17).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she should avoid crawling, operating foot controls, or climb (sic) ladders, ropes and scaffolds. She is capable of occasionally stooping, crouching, kneeling, and climbing ramps and stairs. Furthermore, the claimant can engage in balancing 50% of the workday. The claimant should also avoid exposure to hazardous machinery or unprotected heights. Lastly, the claimant's work is limited to simple, routine tasks with simple work related-decisions.

(Tr. 18). At step four, the ALJ found that plaintiff was unable to perform any past

relevant work. (Tr. 24). At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform. (Tr. 25-26).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id.*).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    <u>Assessment of Subjective Symptoms</u>

Ward argues that the ALJ erred in assessing her subjective complaints in violation of SSR 96-7p.  Specifically, she argues that the ALJ failed to consider her persistent efforts to obtain pain relief and failed to consider her explanations for the

lack of treatment.  Ward insists that the record makes clear that she was treated by multiple medical professionals for her back pain and received pain management from her primary care physician, Dr. Reynolds.  (Dkt. 12, at p. 10-11).  Further, a University of Michigan doctor recommended L5-S1 anterior interbody fusion surgery if conservative treatment failed.  Ward says she was treated in the emergency room twice for headaches and she took medication used to manage severe migraine headaches.  (*Id.* at p. 11).  These efforts, she says, bolster her stated symptoms.  She argues that the ALJ discredited her statements for what the ALJ perceived to be "too little treatment" for her back pain and headaches, but the ALJ did not consider the fact that she was the sole caregiver to her autistic son who was very ill and required extensive treatment.  She testified that caring for her son kept her from receiving care for her chronic back pain.  (*Id.* at p. 13-14).

In response, the Commissioner first points out that SSR 96-7p was no longer in effect at the time of ALJ's decision.  Instead, SSR 16-3p governed the ALJ's treatment of Ward's subjective complaints.  The Commissioner acknowledges that under SSR 16-3p, a claimant's persistent attempts to obtain pain relief may show persistent and severe symptoms and that the ALJ is required to consider possible explanations for a claimant's failure to seek treatment.  (Dkt. 15, at p. 6, 20-21).  But, the Commissioner says the ALJ complied with her obligations under the ruling.  Specifically, as to Ward's attempts to obtain pain relief, the ALJ noted her

generally unremarkable objective findings, pain relief with medication and

chiropractic care, and recommended treatment with conservative care. (*Id.* at p. 7-

10). Despite a recommendation to follow up with formal pain relief, Ward did not

pursue such care. The ALJ recognized that there were no significant complaints or

findings related to back pain from 2017 and Ward was able to continue to be the

primary caregiver for her disabled son, tend to her personal needs, and do

household chores, albeit slowly. The Commissioner further argues that the ALJ

also considered Ward's treatment for her headaches, which included one visit to

the emergency department, discontinuing a headache medication of her own

accord, and starting a new headache medication. (*Id.* at p. 12). But, the ALJ also

noted that Ward denied headaches on multiple occasions and had normal

neurologic and CT scan findings. The ALJ found this evidence inconsistent with

her statement that she suffered from headaches four to five times a week.

As for Ward's argument that the ALJ did not consider the reason for her

failure to obtain aggressive treatment—caring for her son—the Commissioner

disagrees. According to the Commissioner, the ALJ recognized Ward's role as

caregiver to her disabled son throughout the decision, and insists there is no

evidence that it prevented her from obtaining the recommended treatment. (*Id.* at

p. 21). Although Ward explained that she did not pursue surgery because she had

to care for her son, the ALJ noted that the recommendation for surgery was

conditional—only if conservative treatment failed, and she did not pursue pain management outside of her primary care physician. (*Id.* at p. 21). Further, while Ward testified that she needed to go to the hospital more than the one time for headaches but did not because of her son, the record shows that she was able to go the hospital on several other occasions for other conditions. (*Id.* at p. 22).

There are two things to note before considering Ward's argument here. The first is the relevant periods under review. She filed her Title II application for disability insurance benefits and a period of disability on February 22, 2016. The alleged onset date is October 7, 2009, and her date last insured is September 30, 2012. Thus, the relevant period for consideration of her Title II application is limited to October 7, 2009 to September 30, 2012. She filed her Title XVI application for supplemental security income on February 26, 2016. The ALJ limited the period of review on this application to March 2016 through the date of the decision. Specifically, the ALJ stated, "[p]er the Regulations, the earliest date of eligibility for Title XVI benefits is the month after the month of the application or, in this case, March 2016. Accordingly, analysis of claimant's claim for Title XVI benefits spans from March 2016 to the present."[2] (Tr. 18). Ward does not

_____

[2] The Regulations state that payment of benefits may not be made for any period of disability that precedes the first month following the date on which the application is filed, or if later, the first month following the date all conditions for eligibility are met. 20 C.F.R § 416.501; *see, e.g.*, *Oatman v. Comm'r of Soc. Sec.*, 2008 WL 413296, at *3 (N.D.N.Y. Feb. 13, 2008) (Explaining the Regulation); *Napper v. Astrue*, 2010 WL 2104149, at *7, n.4 (W.D. Penn. Apr. 28, 2010). Thus, even if the ALJ found that Ward was disabled for some period of time

contest this review period.  The second issue of note is that the Commissioner is correct that SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016), which took effect on March 16, 2016, governs the ALJ's consideration of Ward's subjective complaints.  SSR 96-7p did not apply at the time of the ALJ's decision.

"A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus on the consistency of the complaints with the other evidence in the record. *Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017).  The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the use of the term credibility ... to clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *1.  "SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the

---

before and up to the filing of her Title XVI application, the Regulations state that she would not be paid for that period.  She would only receive supplemental security income payments beginning either the month after the month of application, or later if found disabled after the application date.  It appears that, since Ward could not receive benefits for any period prior to the month after the month of application, the ALJ limited the review period to the period in which she could receive payments: March 2016 through the date of the decision.

claimant has a medically determinable impairment." *Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017).  As to a claimant's subjective symptoms, the regulations require an ALJ to consider several factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

The undersigned has reviewed the ALJ's decision and finds that the ALJ did not err in her consideration of Ward's efforts to obtain pain relief.  SSR 16-3p provides that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."  The ALJ thoroughly discussed Ward's statements, the objective

medical evidence, and her attempts to relieve her symptoms.  Still, the ALJ found that her statements regarding her symptoms were not entirely consistent with the medical evidence.  (Tr. 18).  After discussing the medical evidence, the ALJ concluded that,

> Although the evidence suggests that claimant continues to experience some symptoms, there is no clinical or objective evidence that her symptoms ever persist at a level severe enough to prevent her from working on a sustained and consistent basis. Further, the substantial evidence of record does not confirm or support disabling symptoms or other limitations arising from claimant's impairments.

(Tr. 24).

For example, on August 28, 2015,[3] she presented to her primary care physician Dr. Reynolds with complaints of increased back pain that was relieved with Motrin 800mg.  (Tr. 357).  It appears the Motrin did indeed work, as she had no back pain, no muscle pain, and no gait disturbance on physical examination.  (Tr. 357, 359).  Ward later presented to Dr. Patel at the University of Michigan for evaluation of her back pain in December 2015.  A radiology report of her thoracic spine revealed mild degenerative change with the anterior vertebral body osteophytes, but vertebral body height was maintained.  (Tr. 307).  Imaging of her

---

[3] The ALJ determined that from the alleged onset date through her date last insured, Ward's only medically determinable impairment was obesity.  (Tr. 18).  Thus, the ALJ did not discuss or consider any evidence related to her back or headaches from this period.  Ward does not contest this.

lumbar spine revealed mild to moderate degenerative disc disease at L5-S1, mild to moderate lower lumbar facet osteoarthritis, grade 1 anterolisthesis, but no spondylolysis and vertebral body height was maintained.  (Tr. 308).  She was diagnosed with degenerative disc disease.  (Tr. 312).  Ward stated that the pain radiated into her buttock area, that she'd had physical therapy in the past with minimal relief, and that she was referred to pain management in the past, but she did not go.  (Tr. 313).   On physical examination, she demonstrated 5/5 strength in her lower extremities, intact sensation, and moderate tenderness along the lumbar spine to palpation.  (Tr. 314-15).  She presented again to the University of Michigan in January 2016 for evaluation of her back pain.  An updated MRI showed acute marrow edema within the left pedicles of the L4 and L5 vertebrae, suspicious pars defect at the left L5 level, and degenerative changes in the lumbar spine at L4-L5 and L5-S1 levels.  (Tr. 322).   Nonetheless, she again had 5/5 strength in the lower extremities, intact sensation, and moderate tenderness to palpation along the lumbar spine.  The doctor recommended non-operative treatment with weight loss, physical therapy, core strengthening, and non-narcotic modalities.  If this conservative treatment failed, she would be offered L5-S1 fusion surgery.  (Tr. 325).

In March through April 2016, Ward saw a chiropractor and a physical therapist.  She reported significant improvement in her lower back pain and

moderate improvement in her midback and cervical spine with chiropractic care. (Tr. 513, 515, 518).  With physical therapy, she reported less pain than at the start of physical therapy (Tr. 527) but complained her functioning had still not improved with her activities of daily living.  At the end of physical therapy, she reported getting 1-3 days of relief per week with therapy, but still had pain that limited her ability to perform activities of daily living.  (Tr. 541).  She was instructed to follow-up with pain management for the possibility of getting injections.  As the ALJ noted, however, she never saw a pain specialist for injections or otherwise more aggressive treatment.  Instead, from May 2016 up to the ALJ's decision December 1, 2017, her treatment consisted of medication refills from her primary care physician.  And, during that same period, she reported back pain only three times—May (Tr. 619), July (Tr. 617), and September 2016 (Tr. 615).  There appears to be no report of back pain after September 2016 through the ALJ's decision.[4]  During her treatment with Dr. Reynolds in 2016, the only positive objective findings were tenderness about the lumbar spine (Tr. 616, 617, 620, 622, 624, 635, 636, 639, 641, 643) and restricted range of motion due to pain (Tr. 622, 624, 641, 643).

---

[4] The Commissioner says she also complained of back pain in November 2016.  But there does not appear to be any treatment record revealing such a complaint.  (Tr. 611-12).

Regarding her migraines, the record demonstrates that she went to the emergency room once for a headache, and periodically complained of headaches to Dr. Reynolds, who prescribed migraine medication.  Specifically, she went to the hospital in October 2016, (Tr. 669), where after two hours of intravenous medication her headache was relieved (Tr. 613).  At her follow-up appointment with Dr. Reynolds after the hospital visit, Ward had normal neurologic examination.  Further, Dr. Reynolds advised that at the onset of a headache Ward first take Imitrex and Zofran.  If those were not available, she suggested taking Benadryl, Tylenol, ibuprofen, and Phenergan together.  (Tr. 614).  Ward was also prescribed Topamax (which she stopped taking herself) and then Fioricet when she experienced negative side effects from the Topamax.  (Tr. 609).  Notably, she did not complain of headaches at every visit with Dr. Reynolds or with other medical providers except for the hospital visit.  For example, a month after her hospital visit for headaches, she again presented to the emergency room with stomach pain following a car accident.  (Tr. 659).  She denied both a headache and photophobia. It is not clear how the fact that she was prescribed and took medication for migraines would require the ALJ to conclude that she did indeed have headaches 4-5 days a week. While Ward clearly experienced headaches and received medication for her headaches, the record does not reflect that she had migraines 4-5 days a week and is therefore disabled because of the migraines.

18

The ALJ considered Ward's attempts at pain relief, the conservative nature of her pain relief modalities, and inconsistent complaints of back pain and headaches.  Within that consideration, the ALJ discussed instances in which Ward did not take prescribed medication and the fact that she did not pursue recommended pain management.  (Tr. 19, 20, 22).  The undersigned finds no error in this discussion.  Further, the ALJ noted that despite her back pain and headaches, Ward remained functional and able to independently care for her personal needs. She also remained the primary caregiver for her disabled son.  She took her son to appointments in Ann Arbor four days a week, supervised him at school and took him to other appointments Monday through Friday.  (Tr. 23). Based on the above evidence taken together, the ALJ concluded that Ward's statements of disabling pain were inconsistent with the record evidence.  The ALJ's determination is supported by substantial evidence and it gave proper consideration to Ward's steps to alleviate her back pain and headaches, the conservative nature of her treatment and her failure to go to pain management for more aggressive treatment undercut her statements of disabling pain.

Ward's second argument—that the ALJ did not thoroughly consider her status as primary caregiver to her disabled son—is also unavailing.  The ALJ noted that she was her autistic son's primary caregiver throughout the decision.  (Tr. 19, 20, 22).  Though Ward appears to claim that she did not go forward with pain

management or surgery because she had to care for her son, the record does not support this.  Ward testified that she declined the recommendation to have surgery because she could not leave her son long enough to recover.  (Tr. 51-52).  Ward appears to be referring to her visit with the University of Michigan doctor with whom she treated in January 2016, discussed above.  However, as the ALJ noted, that doctor did not actually recommend surgery.  He recommended conservative treatment first, such as physical therapy and non-narcotic medication, then *if that did not work*, they would consider surgery.  (Tr. 22, 325).  Further, there is no indication in the record that she forwent more aggressive pain management or some other treatment because of her son.  Instead, the record shows she was able to attend many doctor's visits, chiropractic visits and physical therapy in March and April 2016, and a few trips to the emergency room, despite her son's disability and all while having to take him to appointments and watch over him at school.

Even if the ALJ's discussion of Ward's attempts at pain relief or the impact of caring for her on her treatment efforts could be characterized as erroneous, the error would be harmless.  The Sixth Circuit has "recently held that even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."  *Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc.*

*Sec.,* 693 F.3d 709, 714 (6th Cir. 2012)).   Thus, even if Ward's attempts to alleviate her symptoms bolstered her statements, and her status as a caregiver made it impracticable to go to pain management or have surgery, the remaining evidence still supports the ALJ's conclusion here.  Ward did not consistently complain of pain, at times expressly denying pain or headaches; surgery was not recommended unless conservative treatment failed, and there is no indication it failed; she apparently did not complain of pain after September 2016; and despite her impairments she was able to continue to care for her son by taking him to appointments and staying with him at school Monday through Friday amongst other things.  Further, to the extent Ward points to evidence in her favor, it does not detract from the substantial evidence in support of the ALJ's decision.  As noted earlier, "[t]he Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Felisky*, 35 F.3d at 1035.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)  The ALJ acted within her zone of choice in making her finding that Ward's subjective statements are not consistent with the medical evidence.

> 2.   <u>Consideration of State Agency Consultant's Evaluation</u>

Ward also contends that the ALJ did not provide "legitimate reasons" for discounting State agency examining consultant, Dr. Anderson's opinion. (Dkt. 12, at p. 12). She insists that Dr. Anderson's statements that she struggled severely during the examination and that she had severe tenderness to palpation with severely impaired range of motion is consistent with the record as a whole. The Commissioner asserts that Dr. Anderson did not offer an opinion, and in any event, there is no error in the ALJ's treatment of her evaluation because it is not consistent with the other medical evidence. (Dkt. 15, at p. 15-19).

The ALJ properly summarized Ward's examination with Dr. Anderson:

> In June 2016, the claimant attended a consultative examination with Dr. Gretchen Anderson, an internist. At that time, the claimant's complaints included headaches and back pain. She indicated that her back issues caused difficulty getting on and off the toilet and climbing stairs, and further limited her to sitting no more than fifteen to twenty minutes, standing twenty to thirty minutes, and walking about five minutes or less than one block. During the examination, Dr. Anderson observed that claimant was cooperative, but appeared to be in severe pain. More specifically, she had significant difficulty getting in and out of a chair, squatting, or walking on her heels and toes. She also exhibited a wide-based gait and ambulated very slowly. Furthermore, the claimant demonstrated significantly reduced range of motion throughout her dorsolumbar spine as well as severe tenderness to palpation along the distal thoracic and lumbar regions and severe paravertebral spasms from T8 through L5. Dr. Anderson also found that claimant had 4/5 strength in the bilateral lower extremities. Interestingly, despite these findings, an x-ray of

> claimant's lumbar spine taken in Dr. Anderson's office
> was completely unremarkable.

(Tr. 21; 604-07).

The ALJ gave Dr. Anderson's evaluation limited weight because she was not Ward's treating physician, she only examined Ward the one time, and she did not provide any analysis or opinion with regard to Ward's functional capacity. Additionally, and importantly, the ALJ found that Dr. Anderson's findings were "thoroughly inconsistent with her own radiograph as well as with the clinical and objective findings contained" in the medical record, some of which is discussed above. While the medical record indicates tenderness about the spine, there is no indication of severe spasms or severely reduced range of motion in the spine. And, no other physician observed overt evidence of Ward presenting with a great deal of distress, as did Dr. Anderson. (Tr. 21-22).

As an initial matter, it is questionable at best, whether Dr. Anderson's evaluation qualifies as a medical opinion. "Medical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). While Dr. Anderson provided her judgment about Ward's symptoms as manifested on the date of her examination—that she struggled but gave an honest effort—Dr. Anderson did not discuss functional capacity or

23

prognosis. *See Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (defining "medical opinions") (quoting 20 C.F.R. § 404.1527(a)(2)); *see also Kurish v. Comm'r of Soc. Sec.*, 2012 WL 6093890, at *9 (E.D. Mich. Nov. 6, 2012) (Stating that a doctor's recitation of symptoms does not constitute a medical opinion). Whether Dr. Anderson's evaluation qualifies as a medical opinion is of no moment because the ALJ articulated the weight assessed and the factors supporting that assessment in any event, as discussed below.

Under the regulations, if considered to be an opinion, the ALJ was required to consider Dr. Anderson's findings and explain the weight given to the assessment. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, [the SSA] will evaluate every medical opinion we receive."). The regulation provides that the ALJ will consider the examining relationship, the nature and extent of the treatment relationship, the length of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the medical record, and whether the physician specializes in a particular area of medicine. *Id.* The ALJ is not required to give "good reasons" for the weight assigned to non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

In the view of the undersigned, substantial evidence supports giving Dr. Anderson's June 11, 2016 evaluation only limited weight.  First, the ALJ expressly considered the fact that Dr. Anderson was an internist, who saw Ward only once, and who was not Ward's treating physician.  Second, the ALJ explained that Dr. Anderson's evaluation was not supported by, and was inconsistent with, the other medical evidence in the record.  As the ALJ pointed out, the other medical evidence does not document or suggest that Ward was severely struggling during examinations or in daily life.  On the contrary, she was observed to have intact sensation and normal strength throughout her lower extremities.  (Tr. 314, 325).  Dr. Reynolds, who treated Ward throughout the relevant period, did not note any gait disturbance between March 2016 and December 2017, even when she presented with back pain.  (*See, e.g.*, Tr. 549, 554, 617, 620).  Notably, when she presented to the emergency room January 30, 2017 for leg swelling, she was "able to ambulate without difficulty and [was] able to place pressure on her legs."  (Tr. 655).  Dr. Reynolds also did not make any note of Ward struggling severely to move around the office, and neither did her University of Michigan providers.  Ward was often reported to have intact sensation and normal muscle strength throughout her lower extremities, (Tr. 314, 325, 529, 655-56, 660), and, except for Dr. Anderson's record, it does not appear Ward had anything less than full strength and intact sensation.  Though Ward sometimes presented with some restriction in

her lumbar range of motion, neither of her treating physicians indicated at any of her visits that her restriction was severe.  Again, Ward did not complain of back pain after September 2016, which meaningfully differs from Dr. Anderson's observation that Ward "struggle[s] severely" during the examination.  Finally, the ALJ noted that Dr. Anderson's evaluation was inconsistent with the x-ray she took for the evaluation.  The x-ray revealed "normal lumbar spine series."  (Tr. 607).  Specifically, it showed anatomic alignment of the lumbar vertebrae, the vertebral bodies had normal shape and ossification pattern, and the "posterior elements" were intact.  Dr. Anderson did not attempt to reconcile the discrepancy between her findings and the normal x-ray examination.  In any event, the ALJ was not wrong to note the differences.  Notably, Ward does not point to evidence in the record that is consistent with Dr. Anderson's evaluation.

Lastly, as the Commissioner points out, the State agency reviewing physician, Dr. Nguyen, considered Dr. Anderson's evaluation as well as the other evidence available at the time of the review (June 24, 2016), yet still concluded that Ward was not disabled.  (Tr. 79, 83, 85-87).  The ALJ gave Dr. Nguyen's opinion limited weight because he did not evaluate Ward's mental impairments, was not Ward's treating physician, and provided his evaluation without the benefit of a full record.  (Tr. 22).  Nevertheless, the ALJ concluded that Dr. Nguyen's opinion that Ward was not disabled and remained capable of engaging in light

work was consistent with the "substantial clinical and diagnostic evidence."  Ward

does not contest the ALJ's treatment of this opinion..

In short, though not required to, the ALJ gave good reasons for discounting

the evaluation.  Thus, even if Dr. Anderson were a treating physician, the ALJ's

determination would not constitute error.  *See Price v. Comm'r of Soc. Sec.*, 342

Fed. Appx. 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician

is not supported by objective evidence or is inconsistent with the other medical

evidence in the record," the Sixth Circuit "generally will uphold an ALJ's decision

to discount that opinion.").  Based on the evidence discussed above, the ALJ's

determination that Dr. Anderson's evaluation is inconsistent with the medical

record, and thus entitled only to limited weight, is supported by substantial

evidence.  For this reason, the decision should be affirmed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 13, 2019                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge